**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **PATRICK JOSEPH TURNER, ET AL.** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 05-4206** |
| | | **CONSOLIDATED CASE** |
| **MURPHY OIL USA, INC.** | * | **SECTION "L" (2)** |

**\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \***

**THIS DOCUMENT RELATES TO CASE NO. 06-6343**

## ORDER AND REASONS

Before the Court are Plaintiff's Motions to Remand (the "Motion") (Rec. Doc. No. 757). For the following reasons the motion is GRANTED.

**I.      Factual and Procedural Background**

This case arises out of an oil spill at Defendant Murphy Oil USA, Inc.'s ("Murphy") refinery located in Meraux, Louisiana, caused by Hurricane Katrina.  The Plaintiff filed suit against Murphy, Gregory L. Neve, the refinery manager, Bill Turnage, the refinery's safety manager, and Mentor Insurance Company, alleging that it provided insurance or re-insurance coverage for the oil spill, in the 34th Judicial District Court, Parish of St. Bernard, State of Louisiana.  Plaintiff alleged that Murphy's, Neve's and Turnage's failure to follow Murphy's hurricane preparation procedures caused at least one oil tank to rupture during Hurricane Katrina.  Murphy removed the actions arguing that the Plaintiff failed to state a cause of action against Mr. Neve, Mr. Turnage and Mentor and that they were improperly joined in order to destroy diversity jurisdiction.

**II.     The Motions**

The Plaintiff argues that Mr. Neve was properly joined since the plaintiffs have made sufficient allegations of personal fault to support a claim under *Canter v. Koehring Co.*, 283 So.2d 716 (La. 1973).  The Plaintiff alleges that Mr. Neve failed to implement the refinery's hurricane plan and failed to safe-guard against the possibility of an oil spill.  Further, the Plaintiffs allege that, as refinery manager, Mr. Neve had direct personal responsibility for the day-to-day operations of the refinery as well as oversight and implementation of appropriate measures, practices and policies to be enacted, enforced, or implemented in anticipation of a hurricane.  Mr. Neve, according to the Plaintiff, had personal knowledge of the risk that, if the refinery were to flood, oil tanks could become dislodged and possibly rupture and that Murphy's policies required that all tanks be filled to 30% full when a hurricane is predicted to strike.  The Plaintiff alleges that Mr. Neve failed to ensure that the ground level tanks were filled and that he knew or should have known that the oil tanks had not been properly filled to the 30% level.

In response, Murphy argues that the personal liability of Mr. Neve and Mr. Turnage must be examined under the truly unique circumstances of the case:  Hurricane Katrina and resulting disaster.  Murphy argues that the Plaintiff cannot assert a claim against Mr. Neve nor Mr. Turnage because the Plaintiff has failed to establish that either of them had a personal duty to protect against an unprecedented hurricane and levee failure.  Further, Murphy argues that the risk that an oil tank would leak due to the massive levee failure was not foreseeable by Mr. Neve nor Mr. Turnage and the Plaintiff's claims involve attenuated and complex questions of proximate cause.  According to Murphy, Hurricane Katrina, and the resulting disaster, were completely unforeseeable and to impose personal liability on Mr. Neve and Mr. Turnage would be inequitable and inconsistent with Louisiana law.

Murphy also argues that personal liability cannot be imposed on Mr. Neve because his

position involves general administrative duties which do not subject him to personal liability under Louisiana law.  According to Murphy, Mr. Neve was not responsible for inspecting or operating the equipment that caused the oil spill, instead Mr. Neve had an administrative job coordinating the activities of subordinates.  As a result, Murphy argues Mr. Neve cannot be held personally liable unless he knew or should have know that the duty was not being performed and still failed to cure the risk.  Murphy contends that Mr. Neve had no knowledge that any of the hurricane procedures were not being implemented.

With respect to Mentor, Murphy argues that Mentor did not provide any insurance or re-insurance coverage to Murphy.

### III. Law and Analysis

The federal removal statute, 28 U.S.C. § 1441(a), allows for the removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  Subsection (b) specifies that suits arising under federal law are removable without regard to the citizenship of the parties; all other suits are removable "only if none of the parties in interest *properly* joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b) (emphasis added).

The removing defendant bears the burden of demonstrating that federal jurisdiction exists and that removal was proper.  *Jeringan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir. 1993).  Typically, the removal statute is to be construed narrowly and in favor of remand to state court. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941).  In order to demonstrate that resident defendants were improperly joined, the removing defendant must show that "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court."  *Gasch v. Hartford Accident & Ind. Co.*, – F.3d –,

No. 06-20498, 2007 WL 1847141, *2 (5th Cir. June 28, 2007).  "Claims of fraudulent joinder should be resolved by a summary judgment-like procedure whenever possible.  Although the district court may 'pierce the pleadings' to examine affidavits and other evidentiary material, it should not conduct a full evidentiary hearing on questions of fact."  *Sid Richardson Carbon & Gasoline Co. v. Interenergy Resources, Ltd.*, 99 F.3d 746, 751 (5th Cir. 1996).  "Doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction."  *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).  As a result, all disputed questions of fact and ambiguities of state law must be resolved in favor of the non-moving party.  *Gasch*, 2007 WL 1847141 at *2.

Here, in order to determine whether the Plaintiff can establish a cause of action against Mr. Neve, the Court is to look to state law.  *See Burden*, 60 F.3d at 218-21 (applying Texas law).  The Louisiana Supreme Court has set forth the criteria for subjecting employees to personal liability for injuries suffered by third parties in *Canter v. Koehring Co.,* 283 So.2d 718, 721-23 (La. 1973).  In order for an employee to be found liable, the employer must owe a duty of care to a third party, the duty must be delegated by the employer to the defendant, and the employee must have "breached this duty through personal (as contrasted with technical or vicarious) fault."  *Id.* at 721; *see also Carino v. Wal-Mart Louisiana, LLC*, No. 05-1978, 2006 WL 335784 (W.D. La. Feb. 9, 2006).  An employee may not be personally liable "simply because of his general administrative responsibility for performance of some function of employment."  *Canter*, 283 So.2d at 721-23.  Also,

> [i]f the defendant's general responsibility has been delegated with due care to some responsibility subordinate or subordinates, he is himself not personally at fault or liable for the negligent performance of this responsibility unless he personally knows or should have know of its non-performance or mal-performance and has nevertheless failed to cure the risk of harm.

*Canter*, 283 So.2d at 716.

In *Hornsby v. Alliedsignal Inc.*, the district court for the Middle District of Louisiana applied the *Canter* test and determined that a plant manager was not personally liable for damage that resulted from a leak in a chemical plant.  961 F. Supp. 923, 929 (M.D. La. 1997).  The court, based on affidavits that stated that the plant manager did not have a personal duty to inspect plant machinery and that such duty had been delegated to others, held that there was no possibility that the plaintiff could prevail against the plant manager.  *Id.*; *see also Salavant v. Murphy Oil USA, Inc.*, 2007 WL 854262 (E.D. La. 2007) (holding that Mr. Neve was not personally liable for damages resulting from leak of sulfur dioxide fumes).

The Fifth Circuit, applying the *Canter* criteria, stated that its determination of a plant manager's personal liability turned on two factual issues: (1) whether the plant manager delegated with due care the responsibility of safe maintenance and operation and (2) whether the plant manager was "aware or should have been aware of a risk of harm and nevertheless failed to respond to the risk in the manner in which a reasonably prudent plant manager would respond in the same or similar circumstances."  *Ford v. Elsbury*, 32 F.3d 931, 936 (5th Cir. 1994).  The court remanded the case in light of the fact that deposition testimony of several employees indicated that the plant manager was aware of the risk of harm and thus the evidence, when viewed in a light most favorable to the plaintiffs, raised the possibility that they could succeed in establishing a claim against the plant manager.  *Id.* at 938.

The implementation of the hurricane plan appeared to have been delegated to various employees at the refinery. In his deposition testimony, Mr. Turnage (the refinery's safety manager) states that Mr. Neve was in charge of hurricane plan (Turnage Depo., p. 69, p. 105). However, the deposition testimony of both Mr. Turnage and Mr. Neve create the impression that

the responsibility for implementing the hurricane plan was delegated to various employees at the refinery. In his deposition, Mr. Neve indicated that the implementation of the hurricane plan was delegated to others at the refinery:

> Q: [I]s there some person who then says prepare per checklist Figure 4.4 [of the Emergency Response Plan]?
> A: Not one individual.
> Q: All right. Is there a group of individuals?
> A: Well, again, the operations people would look at the operations sections, the maintenance people would look at the maintenance sections, and each area would go after their area of responsibility.

(Neve Depo., p. 32). Indeed, the testimony of Mr. Turnage also appears to support the conclusion that the responsibilities of the hurricane plan were delegated to various subordinates. At various points in this deposition, Mr. Turnage states that the specifics of implementing the hurricane plan belonged to various other individuals; for example, when asked whether he knew the amount of oil and/or water in certain tanks he stated that "[t]hat responsibility belongs to the Operations Department." (Turnage Depo., at 46)[1] It appears that responsibility for the hurricane plan was delegated across the various departments of the refinery and, thus, Mr. Neve likely only had an administrative function.

However, when considering the factual issues described by the Fifth Circuit in *Ford*, it also would seem that the Plaintiff may have the possibility of establishing a cause of action against Mr. Neve. As stated above, one factual determination is whether Mr. Neve was aware of the risk and failed to act as a reasonable plant manager. *See Ford*, 32 F.3d at 938. In his deposition, Mr. Neve stated he was aware of the risk that a hurricane (either by wind or water)

---

[1] Mr. Turnage did testify that prior to his departure from the refinery, he appointed Mr. Neve to implement the hurricane plan in his absence. (Turnage Depo., p. 105)

may cause the oil tanks to move:

> Q: Let's go specifically, then, to the operations activity which says    plan to fill ground level tanks to 30 percent full.  First of all        why on earth does the hurricane preparation plan call for that to     be accomplished?
>
> A: Because there was a concern that with storage tanks, that they have an adequate level.
>
> Q: Your answer because there was a concern with regard to an adequate level?
>
> A: That they could move.
>
> Q: And what would be the process by which they would move?
>
> A: They would either be moved by wind or by water.
>
> Q: Did you understand that flooding may cause the tank to actually     float as plant manager?
>
> A: Yes.  I was aware that water could make the tank move.  Yes.

(Neve Depo., p. 39-40).  Mr. Neve also testified that he was aware that Hurricane Katrina would create the potential for flooding at the refinery:

> Q: And you knew that there was a forecast storm surge to at least 16 feet as early as Wednesday; isn't that true?
>
> A: Oh, they were – well, I don't know.  I don't have it in front of me.  But they do have a statement of storm surge on their weather forecast, yes.
>
> Q: Well, the statement that they, Impact Weather, was making about the storm surge was a pretty significant storm surge; isn't that true?
>
> A: Yes.
>
> Q: And you, therefore, were aware of the potential for flooding at the Meraux refinery before Saturday, weren't you?
>
> A: We were aware of the potential for flooding, yes.

-7-

(Neve Depo., p. 59).  Based on Mr. Neve's testimony, it appears he was aware of the risk of harm that the hurricane may cause and the issue would appear to be whether Mr. Neve acted as a reasonably prudent manager in response to such risk.

In his deposition, Mr. Neve states that, in preparation for Hurricane Katrina, he would ask if there were any issues or concerns in implementing the hurricane plan and that "it was up to [his subordinates] to come back and say, we can do this, we can't do that."  (Neve Depo., p. 38).  Specifically, when asked whether he was told of any impediments to filling the tanks to 30% full, Mr. Neve stated that he was not aware of any such issues.  (Neve Depo., p. 44-46)  Thus, the issue is whether Mr. Neve acted as a reasonable plant manager in this situation.  In light of the fact that the Court must resolve all disputed questions of fact and ambiguities of state law in favor of the plaintiffs, it does not appear that there is no possibility that the Plaintiff may assert a claim against Mr. Never.  *See Gash*, 2007 WL 1847141 at *2.

Because the Court finds that the Plaintff may be able to assert a claim against Mr. Neve, the Court finds that it is unnecessary to address whether the Plaintiff may also have a claim against Mr. Turnage and Mentor Insurance Company.

## IV. Conclusion

Accordingly, IT IS ORDERED that Plaintiffs Motion to Remand is GRANTED and the case is REMANDED to the 34th Judicial District Court, Parish of St. Bernard, State of Louisiana.

New Orleans, Louisiana, this 11th day of February, 2008.

*Eldon E. Fallon*
_____
UNITED STATES DISTRICT JUDGE